## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ERIC MUATHE, et al.,

      Plaintiffs,

      v.                            Case No. 16-CV-2108-JAR-GLR

LORI FLEMING, et al.,

      Defendants.

## MEMORANDUM AND ORDER

Plaintiffs Eric Muathe, Julie Stover, Kasey King, and forty-five other individuals bring this action alleging various federal civil rights and state law claims. Plaintiffs are members of the "Summary Judgment Group," an unincorporated association that is focused on perceived corruption of judges in Crawford County, Kansas. Plaintiffs allege that Defendants interfered with a contract that Plaintiffs had with Defendant My Town Media, Inc. ("My Town") to run radio advertisements aimed at collecting signatures in an attempt to remove Crawford County judges. This matter comes before the Court on Defendants Lori Fleming and Kurtis Loy's Motion to Dismiss (Doc. 7), Defendants Joe Manns and My Town's Motion to Dismiss for Lack of Jurisdiction and For Failure to State a Claim (Doc. 12), Defendants Manns and My Town's Motion to Strike Amended Complaint (Doc. 15), Defendants Fleming and Loy's Motion to Strike (Doc. 17), Plaintiffs' Motion for Leave to file Second Amended Complaint (Doc. 22), and Defendants Manns and My Town's Motion for Leave to File Supplemental Memorandum in Support of Their Pending Motion to Dismiss (Doc. 33).

The Court first addresses the motions to strike and motion for leave to amend because if leave is granted, the motions to dismiss the First Amended Complaint are moot. As described more fully below, the Court grants the motion to strike the Second Amended Complaint and

finds that the motion for leave to amend should be granted in part and denied in part.  The Court finds that the proposed amendments are futile with respect to all claims of Plaintiffs other than those asserted by Kasey King.  The proposed amendments are also futile with respect to Counts 1, 2, 5, and 7 of the proposed Second Amended Complaint, and with respect to Count 3 as it relates to Manns and My Town.  The proposed amendments are not futile and will be allowed with respect to King's claims in proposed Counts 4 and 6, and with respect to Count 3 as it relates to Defendants Wachter, Fleming, and Loy.  The Court also grants Defendants Manns and My Town's motion to file supplemental memorandum.  Finally, the Court finds that the motions to dismiss the First Amended Complaint are moot.

## I.      Procedural Background

On Febraury 18, 2016, Plaintiffs Eric Muathe, Julie Stover, Kasey King, and fifteen other Plaintiffs filed their original Complaint against Defendants Lori Fleming, Kurt Loy, My Town Media, Inc., and Joe Manns, alleging the following claims: (1) violation of Plaintiffs' rights under 42 U.S.C. § 1985; (2) violation of Plaintiffs' rights under 42 U.S.C. § 1981; (3) violation of Plaintiffs' rights under 42 U.S.C. § 1983; (4) breach of contract; (5) fraud; (6) tortious interference with contractual relations; and (7) defamation.[1]  Plaintiffs filed their First Amended Complaint on May 13, which added thirty additional Plaintiffs.[2]  Defendants Fleming and Loy filed their motion to dismiss on June 29, and Defendants Manns and My Town filed their motion to dismiss on July 25.[3]  Plaintiffs subsequently filed a Second Amended Complaint, without leave of the Court, on July 27.[4]  The Second Amended Complaint adds Bill Wachter as a

---

[1] Doc. 1.

[2] Doc. 2.

[3] Docs. 7 & 12.

[4] Doc. 14.

Defendant and inserts additional factual allegations.[5]  Defendants filed motions to strike the Second Amended Complaint the following day.[6]

On July 14, Plaintiffs filed a Motion for Extension of Time to respond to Defendants Fleming and Loy's motions for dismissal and stay of discovery.[7]  The motion did not state whether there had been prior consultation with other parties before the filing of the motion, as required by the Local Rule.[8]  Defendants filed a response in opposition to the motion on July 28.[9] The Court granted Plaintiffs' motion in part, and extended Plaintiffs' response deadline until July 29.[10]  In granting the extension, the Court noted that Plaintiffs' motion did not state whether there had been prior consultation with other parties before the filing of the motion, and reminded Plaintiffs of their obligation to comply with the Local Rules.[11]

Plaintiffs did not file a response by the July 29 deadline.  Instead, Plaintiffs filed a motion on August 1 seeking leave to file the response out of time.[12]  Plaintiffs' counsel explained that he had left the country because of a death in the family on July 27 and could not access the Internet on July 29 to request another extension of time.  Defendants responded to the motion for leave on August 12.[13]  Plaintiffs filed their proposed response to the motion to dismiss on August 14.[14] The Court entered a Memorandum and Order on August 18 denying Plaintiffs' motion to file

---

[5] *Id.*

[6] Docs. 15 & 17.

[7] Doc. 11.

[8] *Id.*; *see* D. Kan. R. 6.1(a)(1).

[9] Doc. 16.

[10] Doc. 18.

[11] *Id.*

[12] Doc. 19.

[13] Doc. 20.

[14] Doc. 21.

response out of time.[15]  In denying the motion, the Court referenced its previous extension of the deadline, Plaintiffs' failure to meet the extended deadline, and Plaintiffs' history of noncompliance with the Local Rules in this case.  On August 15, Plaintiffs filed a Motion for Leave to File Second Amended Complaint Nunc Pro Tunc.[16]  On November 14, Defendants Manns and My Town filed their motion for leave to file supplemental memorandum.

## II.   Motions to Strike

After Defendants filed their respective motions to dismiss, Plaintiffs filed a Second Amended Complaint on July 27, 2016.[17]  Defendants My Town and Manns filed a Motion to Strike the Second Amended Complaint, and Defendants Fleming and Loy joined in this motion.[18]  Pursuant to Fed. R. Civ. P. 15(a), "[a] party may amend its pleading *once* as a matter of course" within 21 days after serving it, or within 21 days after service of a responsive pleading or a Rule 12 motion.[19]  Thereafter, "a party may amend its pleadings only with the opposing party's written consent or the court's leave."[20]  By filing their Second Amended Complaint prior to seeking consent from Defendants or leave from this Court, Plaintiffs failed to comply with the requirements of the Federal Rules.  Accordingly, the Court grants Defendants' motions to strike.

## III.   Motion for Leave to Amend

### A.   Legal Standards

Under Rule 15(a), leave to amend a complaint is freely given when justice so requires. Rule 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided

---

[15]Doc. 25.

[16]Doc. 22.

[17]Doc. 14.

[18]Docs. 15 & 17.

[19]Fed. R. Civ. P. 15(a)(1) (emphasis added).

[20]Fed. R. Civ. P. 15(a)(2).

on its merits rather than on procedural niceties.'"[21]  Courts may deny leave to amend, however, based on "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."[22]  Whether to allow a proposed amendment after the permissive period addresses the sound discretion of the court.[23]

**B.      Factual Allegations and Claims Asserted in the Proposed Second Amended Complaint**

The First Amended Complaint alleged seven counts pursuant to federal civil rights statutes and state law theories of liability tied to the removal of Plaintiffs' advertisement campaign on a local radio station.  Plaintiffs' proposed Second Amended Complaint adds additional factual allegations and an additional Defendant, Bill Wachter.[24]  The following facts are accepted as true for purposes of the motion for leave to amend.

The forty-eight individual Plaintiffs in this case are members of the so-called "Summary Judgment Group," an unregistered association created to "advance [the members'] constitutional rights to freedom of speech and the right[] to petition the government," and to express displeasure with perceived conflicts of interest between local attorneys and judges in Crawford County, Kansas.  Defendants Lori Fleming and Kurtis Loy are sitting Crawford County district judges.  In February 2015, Plaintiffs began a petition drive to summon a grand jury to remove Judges Fleming and Loy from office.

---

[21]*Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

[22]*Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[23]*See id.*; *Foman*, 371 U.S. at 182; *Wilkerson v. Shinseki*, 606 F.3d 1256, 1268 (10th Cir. 2010).

[24]Doc. 14.  Because Plaintiffs have sought leave to amend in accordance with their Second Amended Complaint, the Court refers to Doc. 14 as Plaintiffs' proposed Second Amended Complaint for purposes of their motion for leave to amend.

As part of their petition drive, Plaintiffs entered into a contract with My Town on February 16, 2015, for advertisement spots on My Town's FM 100.7 ESPN radio station.[25] Pursuant to the agreement, My Town would create and produce the content for advertisements for Plaintiffs' signature drive.  Plaintiffs' advertisements would air during the popular morning sports show "Mike and Mike" at 7:55 a.m. each day for thirty days.  Plaintiffs paid My Town the agreed fees for airing Plaintiffs' advertisement spots for thirty days.  On February 16, Plaintiff Kasey King tendered full payment of the advertisement purchase to My Town.  On February 17, My Town created and produced a sample advertisement spot for Plaintiffs' review and approval. Plaintiffs approved the advertisement, and on February 18 and February 19 My Town ran Plaintiffs' advertisement spots as the parties agreed.[26]

On February 18 or February 19, Judges Fleming and/or Loy became aware of the advertisement on FM 100.7.  Judges Fleming and Loy then had a discussion on either February 18 or February 19, during which they discussed the advertisement and agreed to "use their position[s] as sitting judges of the Eleventh Judicial District of Kansas to prevent and stop plaintiffs'" radio advertisement.  Judges Fleming and Loy allegedly agreed to have Judge Fleming use her position as a judge to persuade My Town's attorney, Defendant Bill Wachter, to pull Plaintiffs' advertisement off the radio.[27]  Plaintiffs claim that Judge Fleming then sent Wachter an email from Judge Fleming's official court-assigned email account, in which she described the advertisement and attributed it to "Eric Muathe and posse cometaut."  Judge Fleming also explained in the email that her children had heard the advertisement, and told

---

[25]As explained more fully below, the proposed Second Amended Complaint is inconsistent as to who entered into the contract.  Doc. 14 at 4, 7, and 15.

[26]Doc. 5 at 5.  The Amended Complaint states that the advertisement ran on "February 18, 2015, and February 19, 2016."  The remainder of the Complaint, however, alleges that the events at issue occurred in Febrauary 2015.  *See generally id.*  Thus, the reference to February 19, 2016 appears to be in error.

[27]Doc. 14 at 8.

Wachter to "get it off."  Wachter and Judge Fleming allegedly worked together at the same law firm before Judge Fleming took the bench, and Wachter practiced before Judge Fleming at the time of the alleged conversation.  After Wachter received the email, Wachter and Judge Fleming allegedly had another conversation in which they discussed the steps necessary for removal of the advertisement.

After this conversation, Wachter allegedly spoke to Manns, and Manns agreed to remove the advertisement spots.  The advertisement spots were removed shortly thereafter.  Wachter also told Manns to conceal the actual reasons why the advertisement was removed when Manns spoke with Plaintiffs about the removal.  Wachter explained that Manns should tell Plaintiffs that the advertisement was removed because the radio station's Federal Communications Commission ("FCC") lawyer called and directed the removal of the advertisements because they violated FCC rules and regulations.  Manns in turn contacted Plaintiff King on February 19 and told him that the advertisement was removed because it violated FCC rules and regulations.

The proposed Second Amended Complaint alleges the same seven civil rights and state law claims as the First Amended Complaint.

C.    **Discussion**

As the procedural history indicates, Plaintiffs in this case have fallen short of compliance with the Federal Rules of Civil Procedure and the Local Rules on several occasions.[28]  While the Court harbors concerns regarding Plaintiffs' ability to comply with deadlines and Local Rules, the Court does not find that denial of the motion for leave to amend is warranted based on undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, or undue prejudice to Defendants, and Defendants do not assert these bases as reasons to deny the motion for leave to

---

[28]*See supra*, Part I.

amend.  The Court therefore turns to whether Plaintiffs' motion for leave should be denied on futility grounds.

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason."[29]  To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[30]  "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[31]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[32]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[33]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[34]  However, notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a motion to dismiss, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[35]

---

[29]*Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001) (citing *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 858–59 (10th Cir. 1999)).

[30]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[31]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[32]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[33]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[34]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[35]*Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citing *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

Defendants do not make individual futility arguments as to each Count in the proposed Second Amended Complaint, but instead refer to the arguments in their motions to dismiss.[36] The Court therefore considers these arguments in deciding whether Plaintiffs' proposed amendments are futile.

### 1.  Standing

Defendants first argue that the proposed amendments are futile as to all Plaintiffs except for Kasey King for lack of standing.  Defendants argue that because the Summary Judgment Group is an unincorporated association, it is not a legal entity in Kansas.  Defendants further contend that because Plaintiff King was the only contracting Plaintiff, the other Plaintiffs do not have standing simply on the basis of their membership in the Group.

The standing doctrine requires federal courts, before considering the merits of an action, to "'satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [the plaintiff's] invocation of federal-court jurisdiction.'"[37]  To establish standing, a plaintiff must demonstrate the presence of three elements:

> (1) "injury in fact"—meaning "the invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal relationship between the injury and the challenged conduct"—meaning that the "injury fairly can be traced to the challenged action of the defendant"; and (3) "a likelihood that the injury will be redressed by a favorable decision"—meaning that the "prospect of obtaining relief from . . . a favorable ruling is not too speculative."[38]

Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing each element of standing "with the manner and degree of evidence required at the successive stages of the

---

[36]Doc. 24 at 2.

[37]*Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)).

[38]*Bd. of Cnty. Comm'rs of Sweetwater Cnty. v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002) (quoting *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 492 (10th Cir. 1998)).

litigation."[39]   Standing is evaluated based on the facts as they exist at the time the Complaint is filed.[40]   At the pleading stage, the Court "'presume[s] that general allegations embrace those specific facts that are necessary to support the claim,'"[41] and "general factual allegations of injury resulting from the defendant's conduct may suffice.'"[42]   Nonetheless, the Court is "not bound by conclusory allegations, unwarranted inferences, or legal conclusions."[43]

The relevant question here is whether Plaintiffs have satisfied the injury-in-fact requirement to establish standing.  As to the federal civil rights claims, as well as the breach of contract and tortious interference with contractual relations claims, Plaintiffs claim that their injuries arise out of Defendants' interference with their contract with My Town.  Thus, to have a "legally protected interest" to support standing, Plaintiffs must demonstrate a legal interest in the contract.  Although Plaintiffs refer in passing in their proposed Second Amended Complaint to their membership in the Summary Judgment Group, the Group is not a party to this action, and the Court cannot find that Plaintiffs' membership in the Group gives rise to a legally protected interest in the contract.[44]   Accordingly, to establish standing, Plaintiffs must have an individual interest in the contract at issue here.

The proposed Second Amended Complaint is internally inconsistent as to who entered into the contract.  Seemingly suggesting that each Plaintiff individually entered into the contract, the proposed Second Amended Complaint alleges that "the plaintiffs *individually and* as

---

[39]*Id.* at 560–61; *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004).

[40]*Tandy*, 380 F.3d at 1284.

[41]*Lujan*, 504 U.S. at 561 (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)).

[42]*Id.*

[43]*Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994) (citations omitted).

[44]*See Lippoldt v.* Cole, 468 F.3d 1204, 1216 (10th Cir. 2006) (holding that an unincorporated association is not a "person" within the meaning of 42 U.S.C. § 1983, and therefore is not entitled to bring a claim under § 1983). *Bradbury Co. v. Teissier-duCros*, 387 F. Supp. 2d 1167, 1176 (D. Kan. 2005); *Prime v. Beta Gamma Chapter of Pi Kappa Alpha*, 47 P.3d 402, 405 (Kan. 2002) (holding that in the absence of statutory authority to the contrary, an unincorporated association is not a legal entity under Kansas law, and therefore has no capacity to sue or be sued);

member[s] of an unregistered association entered into a radio advertisement contract with the defendant My Town."[45]  But earlier in the proposed Second Amended Complaint Plaintiffs allege that "plaintiff Kasey King on behalf of other plaintiffs contracted with defendant My Town Media, Inc."[46]  If King entered into the complaint on behalf of all Plaintiffs, only King would have standing because Plaintiffs do not have standing by virtue of their membership in the Group.

Judges Fleming and Loy have attached a document to their motion to dismiss that they contend is a contract for the radio advertisements.[47]  The document states "Received from: Kasey King[,] $300 cash[,] Advertising for Summary Judgment Group," and is dated February 16, 2016.[48]  Plaintiffs characterize the document as a "receipt."[49]  If the document is simply a receipt, it would indicate only who provided payment for the advertisement, and not who entered into the contract.  But although Plaintiffs characterize the document as a receipt, they reference the document as proof that Plaintiff King entered into the contract on behalf of other Plaintiffs.[50]

Based on the internal inconsistencies in the Complaint as to who entered into the contract, as well as Plaintiffs' apparent reliance on the document as proof of who entered into the contract, the Court finds that Plaintiffs have alleged that Plaintiff King entered into the contract on behalf of other Plaintiffs.  Therefore, the Court finds that the proposed amendments to Counts 1, 2, 3, 4, and 6 are futile as to all Plaintiffs except for Plaintiff Kasey King.

---

[45]Doc. 14 at 15 (emphasis added).

[46]Doc. 14 at 7.

[47]Doc. 8-1.  Plaintiffs attached the same document to their Second Amended Complaint.  Doc. 14-1.

[48]Doc. 8-1.

[49]Doc. 14 at 5, 7.

[50]*Id.*

Turning to the fraud claim in proposed Count 5, the Court finds that all Plaintiffs except Kasey King lack standing because the statement at issue was directed only to King. Furthermore, King, as the only Plaintiff who entered into the contract, is the only Plaintiff who can potentially allege reliance on a fraudulent statement.  Finally, as to the defamation claim alleged in proposed Count 7, the Court is satisfied that Plaintiffs have met the requirements of standing by alleging that Judge Fleming stated that Plaintiffs were members of Posse Comitatus. In sum, the Court finds that the proposed amendments as to Counts 1 through 6 are futile as to all Plaintiffs other than Kasey King for lack of standing.  The proposed amendments as to Count 7 are not futile for lack of standing.  The Court therefore turns to whether proposed Counts 1 through 6 are futile as to Plaintiff King, and whether Count 7 is futile as to all Plaintiffs.

### 2.      Count 1—42 U.S.C. § 1985

Plaintiffs allege a "deprivation of their civil rights under the First Amendment" pursuant to 42 U.S.C. § 1985, against Defendants Fleming, Loy and My Town.[51]  Section 1985(3) prohibits persons from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons equal protection under the laws."[52]  To state a claim for a private conspiracy under § 1985, a plaintiff must allege, *inter alia*, that the conspiracy was (1) motivated by a race or class-based invidiously discriminatory animus; and (2) "'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment."[53]

---

[51]Doc. 5 at 6–7.

[52]42 U.S.C. § 1985(3).  Subsections (1) and (2) of § 1985 apply to conduct preventing officers from performing duties and to obstruction of justice, respectively, and therefore do not apply to the causes of action alleged here.

[53]*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993); *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993); *Home Quest Mortg., LLC v. Am. Family Mut. Ins. Co.*, 340 F. Supp. 2d 1177, 1188 (D. Kan. 2004).

Plaintiffs do not allege discrimination based on race or any other class-based status. Plaintiffs, however, do allege that they are "members of a citizen class-based protected group involved in a protected speech."[54]  But this allegation regarding class-based status is conclusory, and therefore not entitled to an assumption of truth.  Furthermore, the "class-based animus" requirement "has been narrowly construed and does not, for example, reach conspiracies motivated by an economic or commercial basis."[55]  Plaintiffs' allegations that they are members of a protected class based on their engagement in protected speech does not satisfy the class-based-animus requirement under § 1985.  The Court therefore finds that the proposed amendment is futile with respect to Count 1.

### 3.    Count 2—42 U.S.C. § 1981

Plaintiffs assert a claim for interference with their contract with Defendant My Town pursuant to 42 U.S.C. § 1981 against Defendants Fleming, Loy, and My Town in their proposed Second Amended Complaint.  Defendants move for dismissal on the basis that Plaintiffs do not allege racial discrimination as required to state a § 1981 claim.  Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens."[56]  Section 1981 was enacted to prevent discrimination against an individual on the basis of his or her race or ethnic background.[57]  Accordingly, to state a claim under § 1981 a plaintiff must make a showing of racial animus.[58]  Although Plaintiffs allege that Defendants'

---

[54]Doc. 14 at 6, 12.

[55]*Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (citing *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 837 (1982)).

[56]42 U.S.C. § 1981.

[57]*Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987).

[58]*Patrick v. Miller*, 953 F.2d 1240, 1250 (10th Cir. 1992) (citing *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982)).

actions were motivated by "invidious discriminatory animus" because Plaintiffs are members of a "protected class," these allegations are conclusory and not entitled to an assumption of truth. More fundamentally, as Defendants argue, Plaintiffs do not allege racial animus, and there is no suggestion that Defendants' conduct, allegedly motivated by the content of Plaintiffs' advertisements, was somehow fueled by Plaintiffs' race.  The proposed amendment as to Count 2 is futile.

**4.      Count 3—42 U.S.C. § 1983**

Plaintiffs allege a deprivation of their First Amendment rights pursuant to 42 U.S.C. § 1983 in their proposed Second Amended Complaint.  Plaintiffs bring this claim against Defendants Fleming, Loy, Wachter, Manns, and My Town.  Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the constitution.[59]  Thus, to state a § 1983 claim, a plaintiff must establish two essential elements: (1) "violation of a right secured by the Constitution and laws of the United States"; and (2) that the alleged deprivation was caused by "a person acting under color of state law."[60]  Defendants argue that Plaintiffs have failed to state a claim because they have not alleged state action. Defendants also argue for application of absolute judicial immunity and qualified immunity.

**a.      Violation of a Constitutional Right**

Although Defendants do not argue that Plaintiffs have failed to allege a violation of a constitutional right, the Court considers whether Plaintiffs' proposed amendments to Count 3 are futile on this basis.  "The First Amendment forbids abridgement of the 'freedom of speech.'"[61]

---

[59]42 U.S.C. § 1983; *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1101 (10th Cir. 2009) (citing *Radecki v. Barela*, 146 F.3d 1227, 1229 (10th Cir. 1998)).

[60]*West v. Atkins*, 487 U.S. 42, 48 (1988); *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016) (citing *D.T. ex rel. M.T. v. Indep. Sch. Dist. No. 16*, 894 F.2d 1176, 1186 (10th Cir. 1990)).

[61]*Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415 (1979); U.S. Const. Amend. I.

"[S]peech on 'matters of public concern . . . is 'at the heart of the First Amendment's protection.'"[62]  Here, Plaintiffs allege in their proposed Second Amended Complaint that their advertisement spots were directed at collecting signatures for their campaign to remove Judges Fleming and Loy based on Plaintiffs' "displeasure with perceive[d] corruption[ and] conflicts of interests between local attorneys and judges in handling cases in the Eleventh Judicial District of Kansas court system."[63]  Because this alleged speech was directed at a matter of public concern, i.e. a campaign aimed at perceived corruption and conflicts of interests of state court judges, Plaintiffs have alleged interference with protected speech.

### b.  Action Under Color of State Law

The Tenth Circuit in *Schaffer v. Salt Lake City Corporation* explained the following framework for determining whether a state employee acts under color of state law:

> "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  However, "the fact that a tort was committed by an individual employed by the state does not, *ipso facto,* warrant attributing all of the employee's actions to the state."  Rather, "before conduct may be fairly attributed to the state because it constitutes action 'under color of state law,' there must be 'a real nexus' between the employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant."[64]

The plaintiff in *Schaffer* brought suit against two parking enforcement officers, among others, claiming malicious prosecution.[65]  The plaintiff alleged that the parking officers made false statements to police officers and testified falsely in the plaintiff's criminal trial regarding

---

[62]*Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–59 (1985)).

[63]Doc. 14 at 4.

[64]814 F.3d 1151, 1155–56 (10th Cir. 2016) (citations omitted); *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995) (citing *Indep. Sch. Dist. No. 16*, 894 F.2d at 1186).

[65]*Id.* at 1155.

whether the plaintiff struck the parking officers and their vehicle.[66]  Affirming the district court's

grant of summary judgment in favor of the officers, the Tenth Circuit held that the plaintiff had

not established the requisite nexus between the parking officers' statements regarding the

incident and their authority to write parking tickets and impound vehicles.[67]  The court

explained, "[a]fter all, any citizen can report suspicious activity to the police and repeat that

testimony in court; in doing so, the parking enforcement officers exercised no 'power possessed

by virtue of state law and made possible only because [the parking officers were] clothed with

the authority of state law.'"[68]

In *Hall v. Witteman*, the plaintiff brought a § 1983 suit in this District against a county

attorney, various other attorneys, and two local bar associations alleging First Amendment and

Equal Protection Clause violations.[69]  The plaintiff, upset at the judge for alleged treatment of his

mother, took out advertisements and wrote letters to the editor in several local newspapers urging

citizens to remove the judge in an upcoming election.[70]  The advertisement ran for one day, but

after the judge, the county attorney, and the other defendants threatened to sue the publisher for

running the advertisement, the publisher removed the advertisement and ran a responsive

advertisement by the defendants in its place.[71]  The county attorney and the other defendants

sought dismissal on the basis that their conduct did not constitute action under color of state

---

[66]*Id.*

[67]*Id.* at 1156.

[68]*Id.* (quoting *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995)).

[69]569 F. Supp. 2d 1208, 1222 (D. Kan. 2008).

[70]*Id.* at 1213.

[71]*Id.* at 1213–14.

law.[72]  Judge Crow granted the motion to dismiss, finding that the plaintiff had not alleged a

sufficient nexus between the defendant's conduct and his status as county attorney:

> Here, defendant Witteman's official authority is not alleged to have contributed
> significantly to the unconstitutional conduct of which the plaintiff complains.  The
> allegations of the Complaint simply do not permit an inference that defendant
> Witteman's status as County Attorney made any difference whatsoever to *The
> Coffey County Republican*, or that the same actions which arguably violate the
> First Amendment or the equal protection clause would not have been taken by the
> newspaper had defendant Witteman not been the County Attorney, or had he
> endorsed the Responsive Advertisement as "Attorney at Law," instead of as
> "County Attorney."  To find otherwise would improperly impose liability on the
> state for conduct for which it cannot be fairly blamed.[73]

### i.        Defendants Fleming and Loy

Defendants argue that Judges Fleming and Loy did not act under color of state law in

persuading Wachter, Manns, and My Town to remove the advertisement spots.  Defendants

contend that neither Judge Fleming nor Judge Loy used their "statutory power" or "formal

judicial power" in an effort to remove the ads.[74]  My Town and Manns note that the Judges did

not issue a court order to My Town or have the president of My Town held in contempt.[75]

But whether or not Judges Fleming and Loy displayed their "formal judicial power"

through the issuance of a court order, while informative, is not dispositive of the under color of

state law issue.  As the Supreme Court stated in *Screws v. United States*:

> It is clear that under "color" of law means under "pretense" of law. . . .  Acts of
> officers who undertake to perform their official duties are included whether they
> hew to the line of their authority or overstep it.  If, as suggested, the statute was
> designed to embrace only action which the State in fact authorized, the words
> "under color of any law" were hardly apt words to express the idea.[76]

---

[72]*Id.* at 1219.

[73]*Id.* at 1222.

[74]Doc. 8 at 10; Doc. 13 at 6.

[75]Doc. 13 at 6.

[76]325 U.S. 91, 111 (1945).

Thus, the pertinent question is whether Defendants "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."[77]

Assuming the truth of Plaintiffs' allegations, which the Court must, Plaintiffs have stated a plausible claim of action under color of state law.  While neither Judge Fleming nor Judge Loy issued a formal court order, they allegedly agreed to use their positions as sitting judges to influence the removal of the advertisements, after which Judge Fleming used her court e-mail address to tell Wachter—an attorney who practiced before Judge Fleming and formerly worked at the same firm as her—to have the advertisement taken down.  A plausible inference of action under color of state law arises where a judge allegedly uses her badge of authority to influence the decision of an attorney practicing before her on a matter related to her position as a state judge.[78]  This inference is further bolstered by the allegation that the two judges specifically discussed using their positions to influence the outcome.  The proposed Second Amended Complaint sufficiently establishes a "real nexus" between the alleged violation and Judges Fleming and Loy's "use or misuse of their authority as [] public employee[s]" to satisfy the action under color of state law requirement.

Defendants argue that Judges Fleming and Loy's alleged conduct is analogous to that at issue in *Schaffer* and *Hall*, where the courts found that the plaintiffs had failed to establish action under color of state law.  But those cases are distinguishable from the proposed Second Amended Complaint at issue here.  In *Schaffer*, the Tenth Circuit emphasized that "any citizen" could have reported criminal activity to the police in the way that the parking officers had.[79]  In

---

[77]*West v. Atkins*, 487 U.S. 42, 49 (1988) (citing *United States v. Classic*, 313 U.S. 299, 326 (1941)).

[78]*See Owen v. City of Independence, Mo.*, 445 U.S. 622, 650–51 (1980) (quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961)) ("By creating an express federal remedy [in the Civil Rights Act], Congress sought to 'enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a state and represent it in some capacity, whether they act in accordance with their authority or misuse it.'").

[79]814 F.3d 1151, 1156 (10th Cir. 2016).

*Hall*, Judge Crow determined that there was no indication that the newspaper would have acted differently "had defendant Witteman not been the County Attorney, or had he endorsed the Responsive Advertisement as 'Attorney at Law,' instead of as 'County Attorney.'"[80]  By contrast, here Plaintiffs allege that Judges Fleming and Loy explicitly agreed to use Judge Fleming's status as a judge to influence the outcome.  Further, Plaintiffs' proposed Second Amended Complaint alleges that Judge Fleming communicated to Wachter through her official court-issued email account, and that Wachter practiced in front of Judge Fleming at the time of the alleged conduct.  Unlike in *Schaffer* and *Hall*, the allegations here do not allow for the inference that "any citizen" could have influenced the decision to remove the advertisement, or that Wachter, Manns, and My Town would have acted the same way had Judges Fleming and Loy not been sitting judges.  The Court therefore finds that Plaintiff King has stated a plausible claim of action under color of state law to support his § 1983 claim against Judges Fleming and Loy.

### ii.      Defendant Wachter

Plaintiffs assert that Wachter is liable for the alleged First Amendment violations based on a conspiracy theory of liability under § 1983.  "A § 1983 conspiracy claim may arise when a private actor conspires with [a] state actor to deprive a person of a constitutional right under color of state law."[81]  Proceeding under this theory, a plaintiff's "pleadings must specifically

---

[80]569 F. Supp. 2d 1208, 1222 (D. Kan. 2008).

[81]*Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990) (citing *Dennis v. Sparks*, 449 U.S. 24, 29 (1980)).

present facts tending to show agreement and concerted action."[82]  This requires a showing that "both public and private actors share[d] a common, unconstitutional goal."[83]

Plaintiffs allege in their proposed Second Amended Complaint that Judge Fleming and Wachter had a discussion in which they agreed to take actions to remove the radio advertisements.  Wachter, allegedly acting as My Town's attorney, in turn convinced Manns to remove the advertisement.  The alleged discussion between Judge Fleming and Wachter demonstrates not only an agreement to act in an unconstitutional way, but also a common unconstitutional goal and a specific agreement to deprive Plaintiffs of their constitutional rights.  Wachter's subsequent conduct demonstrates concerted action.  Thus, the Court finds that Plaintiff King has stated a plausible claim of action under color of state law as to Wachter.

### iii.     Defendant Manns

Plaintiffs also allege that Manns was a participant in the conspiracy, and therefore liable for action under color of state law.  The allegations as to Manns do not give rise to a plausible § 1983 conspiracy claim.  Although Manns allegedly agreed to remove the advertisement, Plaintiffs do not allege that he removed the advertisement in furtherance of an agreement to deprive Plaintiffs of their constitutional rights.  The Court finds that Plaintiffs have not stated a plausible claim of action under color of state law as to Manns.

### iv.     Defendant My Town

Plaintiffs allege that My Town acted under color of state law pursuant to a § 1983 conspiracy theory of liability.  Plaintiffs, however, do not allege any specific acts of My Town in furtherance of the conspiracy, and instead appear to base their claim against My Town on the

---

[82]*Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1126 (10th Cir. 2000) (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994)).

[83]*Id.* (quoting *Anaya v. Crossroads Managed Care Sys.*, 195 F.3d 584, 596 (10th Cir. 1999)).

conduct of its employee Manns.[84]  As an initial matter, the Court has found above that Defendant

Manns did not act under color of state law.  Additionally, for supervisory liability to attach in a §

1983 case, a plaintiff "must demonstrate an affirmative link between the supervisor's conduct

and the constitutional deprivation; liability based upon respondeat superior will not do."[85]

Plaintiffs here have not demonstrated a link between Defendant My Town's conduct and the

constitutional deprivation.  Accordingly, Plaintiffs' proposed § 1983 claim against Defendant

My Town, premised on a theory of respondeat superior, is futile.

    **c.**    **Judicial Immunity**

    Judges Fleming and Loy argue that even if Plaintiffs have stated a § 1983 claim, that

claim should be dismissed against them based on the application of judicial immunity.

"[J]udicial immunity is an immunity from suit, not just from the assessment of damages."[86]

Furthermore, judicial immunity cannot be overcome by allegations of bad faith or malice.[87]

Rather, judicial immunity is only overcome in the following two sets of circumstances: (1) "a

judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's

judicial capacity" and (2) "a judge is not immune for actions, though judicial in nature, taken in

the complete absence of all jurisdiction."[88]

    Here, the acts of Judges Fleming and Loy were not "judicial acts" taken in their judicial

capacity.  As Defendants correctly argue, this was not conduct exercised through the use of

formal judicial power, such as the issuance of a court order or the holding in contempt of a

---

[84]Doc. 14 at 3 (alleging that Manns was "defendant My Town Media, Inc.'s employee and/or agent, and was acting within the scope of, and in furtherance of his employer's business interest").

[85]*Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 371 (1976)).

[86]*Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

[87]*Id.* (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

[88]*Id.*; *Fuller v. Davis*, 594 F. App'x 935, 939 (10th Cir. 2014) (quoting *Disciplinary Bd. of Sup.Ct. of N.M.*, 520 F.3d 1183, 1195 (10th Cir. 2008)).

party.[89]  Rather, as the Court has found above, Judges Fleming and Loy allegedly acted under color of state law by using their badges of authority as state judicial officers.  Although the alleged conduct was possible only because they were "clothed with the authority of state law," the conduct was not a "judicial act."  Therefore, Judges Fleming and Loy are not entitled to judicial immunity.

Defendants appear to suggest that if they are found to have allegedly acted under color of state law, they must be entitled to judicial immunity.[90]  The Seventh Circuit considered a similar either-or argument in *Lopez v. Vanderwater*.[91]  There, the plaintiff rented an apartment from a judge, and after falling behind on rent the plaintiff left the apartment.  After learning that the plaintiff had returned to the apartment, the judge "acted as [a] prosecutor" and charged the plaintiff with theft of an apartment key.[92]  The judge made the decision to prosecute the plaintiff, prepared a written charge, had his business associate sign the blank complaint, prepared a guilty plea and waiver of jury to be signed by the plaintiff, and "presented the charge and plea form to himself with the expectation that it would be the basis for an unconstitutional conviction and sentence."[93]  In reversing the district court's grant of summary judgment in favor of the judge, the Seventh Circuit found that the judge acted under color of state law and was not entitled to judicial immunity.[94]  The court considered the judge's alternative arguments regarding action under color of state law and judicial immunity, and explained why it rejected them:

---

[89]*See* Doc. 8 at 10; Doc. 13 at 6.

[90]Doc. 8 at 10 ("In the event that this Court were to accept Plaintiffs' allegations that Loy and Fleming's alleged actions were taken by virtue of their statutory power as judges, Loy and Fleming would be entitled to absolute judicial immunity.").

[91]620 F.2d 1229 (7th Cir. 1980).

[92]*Id.* at 1235.

[93]*Id.*

[94]*Id.* at 1236–37.

As phrased in [Judge] Vanderwater's brief, counsel contends that plaintiff Lopez is "whipsawed" between the "absence of all jurisdiction" and "judicial acts" requirements and the color of law requirement. If jurisdiction is absent or the act is not judicial, counsel maintains, the color of law requirement is not met; if the color of law requirement is met, the act is judicial and jurisdiction is present. Acceptance of this theory would remove the limitations on absolute judicial immunity discussed above and render judges immune from any suit whatsoever under § 1983. In *Sparkman* the Court did note that an allegation that a judge's action was taken under color of law may appear inconsistent with a contention that the same act was not a "judicial act[.]" That passing observation, however, could hardly have been intended to wipe out limitations on judicial immunity implicitly recognized elsewhere in the opinion. There is no reason to differentiate between judges and other officers in applying the color of law requirement. Vanderwater was able to take his prosecutorial acts because he was cloaked with the office of judge. His use of that office to prosecute Lopez was action under color of state law. Because Vanderwater is not immune from liability for his prosecutorial acts, and because those acts were an integral part of his unlawful course of conduct, we reverse the summary judgment in his favor.[95]

As the court in *Lopez* found, the mere fact that a judge acted under color of state law does not entitle the judge to absolute judicial immunity.[96] Here, the Court has found that Judges Fleming and Loy acted under color of state law. Additionally, the Court finds that Defendants were not engaged in "judicial acts," and therefore they are not entitled to judicial immunity.[97] Plaintiffs King's proposed Second Amended Complaint is therefore not futile on the basis of judicial immunity.

---

[95]*Id.* (citations omitted).

[96]*See Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (explaining that judges are entitled to absolute immunity from suit for "judicial acts" and will be held liable only when they act in the "clear absence of jurisdiction").

[97]As noted above, Defendants Manns and My Town have filed a motion for leave to file a supplemental memorandum, which the Court grants. Defendants have attached the proposed supplemental memorandum to their motion. Defendants argue that Plaintiffs, in their Reply to Defendants' Objection to the Magistrate Judge's Order Setting a Scheduling Conference (Doc. 31), admitted that Judges Fleming and Loy's actions were "non-judicial in nature." Doc. 33, Ex. A. The Court has considered this argument and apparent admission, and finds that although Judges Fleming and Loy's alleged conduct did not constitute "judicial acts," the Judges' conduct did constitute action under color of state law and the Judges are not entitled to judicial immunity.

### d. Qualified Immunity

Defendants also argue for dismissal on the basis of qualified immunity. Qualified immunity is an affirmative defense that "shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[98] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."[99] To this end, qualified immunity shields government officials from liability unless the plaintiff shows (1) the defendant's violation of a constitutional right; and (2) that the right the official violated was "clearly established" at the time of the challenged conduct.[100] "For a constitutional right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[101] A plaintiff may satisfy the "clearly established" requirement "by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'"[102]

As to the first prong of the qualified immunity analysis, the Court has previously found that Plaintiffs have alleged a plausible violation of a constitutional right, namely, a violation of their right to freedom of speech under the First Amendment.[103] Turning to the second prong of the qualified immunity analysis, the Court finds that the constitutional right that Plaintiffs assert

---

[98]*Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).

[99]*Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011).

[100]*Id.* at 2080.

[101]*Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013) (quoting *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013)).

[102]*Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015) (quoting *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015)).

[103]*See supra* Part V.D.1.

was clearly established at the time of the alleged deprivation.  As the Court explained above, "speech on 'matters of public concern . . . is 'at the heart of the First Amendment's protection.'"[104]  Speech regarding matters of "corruption, impropriety, or other malfeasance" of public officials is clearly protected speech.[105]  Further, it is clearly established that political advertisements or advertisements related to matters of public concern can be protected speech.[106]  Thus, the law was clearly established at the time of Defendants' alleged misconduct that Plaintiffs' radio advertisements, which related to matters of public concern, constituted protected speech.  Accordingly, the Court finds that Plaintiffs' proposed Second Amended Complaint is not futile on the basis of qualified immunity.

In sum, Plaintiffs' § 1983 claim in the proposed Second Amended Complaint is futile as it relates to Manns and My Town because Plaintiffs do not allege that these Defendants acted under color of state law.  Plaintiffs' motion for leave to amend is therefore denied as it relates to the § 1983 claim against these Defendants.  Proposed Count 3 is not futile as it relates to Defendants Fleming, Loy, or Wachter.  Accordingly, the Court grants Plaintiffs' motion for leave to amend as it relates to King's § 1983 claims against Defendants Fleming, Loy, and Wachter.

---

[104]*Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–59 (1985)).

[105]*Dill v. City of Edmond, Okla.*, 155 F.3d 1193, 1202 (10th Cir. 1998) (quoting *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988)).

[106]*See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 265–66 (1964) (holding that paid editorial advertisement criticizing abuses by public officials of civil rights demonstrators and seeking financial support for civil rights movement did not lose First Amendment protections simply by nature of being an advertisement); *Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trs.*, 235 F.3d 1243, 1247 n.2 (10th Cir. 2000) (holding that local newspaper advertisement in which member of county community college's board of trustees urged public to vote against tax assessment proposed by board was protected speech); *Hall v. Witteman*, 569 F. Supp. 2d 1208, 1218 (D. Kan. 2008) (finding that plaintiff had stated a violation of his First Amendment rights where complaint alleged that government actors convinced newspaper to remove a political advertisement that plaintiff ran in the newspaper).

5.      **Counts 4 Through 7—State Law Claims**

Plaintiffs allege claims of breach of contract, fraud, tortious interference with contractual relations, and defamation in Counts 4 through 7 of their proposed Second Amended Complaint. As explained above, proposed Counts 4 through 6 are futile as to all Plaintiffs except for Kasey King. Defendants argued in their motions to dismiss that because the three federal claims should be dismissed, the Court should decline to exercise supplemental jurisdiction over the state law claims. However, because the Court finds that King's proposed § 1983 claims against Defendants Fleming, Loy, and Wachter are not futile, the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to consider the non-futile state law claims in Plaintiffs' proposed Second Amended Complaint. The Court therefore turns to whether each of the state law claims is futile in light of other considerations.

Plaintiffs allege a fraud claim against Manns, Wachter, and My Town in Count 5 of the proposed Second Amended Complaint. This claim arises out of the allegedly false statements Manns made to King concerning the reason why the advertisement was removed.[107] To successfully state a fraud claim under Kansas law, a plaintiff must allege reasonable and actual reliance on a false statement.[108] Here, Plaintiffs' allegation regarding their reliance on the false statement is conclusory, and therefore not entitled to the assumption of truth. Furthermore, as Defendants correctly argue, a plaintiff cannot make a showing of reliance in support of a fraud claim when the misrepresentation is alleged to have occurred after the formation of a contract.[109]

---

[107]*Id.* at 16.

[108]*Knop v. Gardner Edgerton Unified Sch. Dist. No. 231*, 205 P.3d 755, 763 (Kan. Ct. App. 2009) (citing *Bomhoff v. Nelnet Loan Servs., Inc.*, 109 P.3d 1241 (Kan. 2005)).

[109]*Indy Lube Investments, L.L.C. v. Wal-Mart Stores, Inc.*, 199 F. Supp. 2d 1114, 1122 (D. Kan. 2002) (citing *Todd v. Wichita Fed. Sav. & Loan Ass'n*, 337 P.2d 648, 650 (1959)) ("The Indy Lube/Wal-Mart contract was finalized on December 12, 2000, *before* Wal-Mart made this alleged misrepresentation some time between December 19, 2000 and January 31, 2001 . . . Thus, Indy Lube has failed to state an actionable claim for fraud based on this alleged misrepresentation.") (emphasis in original).

The Second Amended Complaint alleges that Manns made the false statement to King on February 19, 2015, after the contract for advertisements was entered into.  Therefore, the Court finds that Plaintiffs' fraud claim would be futile.  Plaintiff King is denied leave to amend as to Count 5.

Plaintiffs assert a claim of defamation in Count 7.  This claim stems from the alleged statement by Judge Fleming that she was told that the advertisements were created by "Eric Muathe and posse cometaut."[110]  "The elements of defamation include (1) false and defamatory words; (2) communication to a third party; and (3) resulting harm to the reputation of the person defamed."[111]  Plaintiffs claim that the alleged statement conveyed that Plaintiffs "are members of Posse[] Comitatus group, a known violent white supremacist, right-wing, and anti-government group."[112]  But Judge Fleming allegedly stated only that Eric Muathe and Posse Comitatus were responsible for the advertisements, not that Plaintiffs were members of that group.  The statement did not even refer to Plaintiffs aside from Eric Muathe.[113]  As to Muathe, the statement did not clearly suggest that he was part of Posse Comitatus, but only that he was partially responsible for the advertisements.  Further, Plaintiffs' allegation that they "suffered harm and damages to their individual reputations in the community" as a result of the statement is simply a conclusory recitation of an element of defamation, and is not supported by any factual allegation.  Accordingly, the Court denies Plaintiffs' motion for leave to amend as to Count 7 because this claim is futile.

---

[110]Doc. 14 at 9, 19.

[111]*Dominguez v. Davidson*, 974 P.2d 112, 117 (Kan. 1999) (citing *Lindemuth v. Goodyear Tire & Rubber Co.*, 864 P.2d 744 (Kan. Ct. App. 1993); *Batt v. Globe Eng'g Co.*, 774 P.2d 371, 375 (Kan. Ct. App. 1989) (citation omitted).

[112]Doc. 14 at 19.

[113]*Id.* at 9.

The Court finds that Counts 5 and 7 are futile as to all Plaintiffs, and that Counts 4 and 6 are futile as to all Plaintiffs except for Kasey King.  The Court therefore grants Plaintiff King leave to amend as to proposed Counts 4 and 6.  The Court denies Plaintiffs leave to amend as to all other state law claims.

## IV.      Conclusion

As described above, the Court will allow Plaintiff King leave to amend in part, allowing to survive his § 1983 claim against Defendants Fleming, Loy and Wachter, but not against Defendants Manns or My Town.  The Court further grants King leave to amend regarding his breach of contract and tortious interference with contractual relations claims.  The Court denies King leave to amend as to his § 1985, § 1981, fraud, and defamation claims, as these claims are clearly futile.  The Court further denies the motion for leave to amend as it relates to all claims by Plaintiffs other than King.

The Court's Order granting Plaintiff King leave to amend in part should not be construed as an endorsement of Plaintiffs' previous lack of compliance with the Federal Rules of Civil Procedure and Local Rules.  **Plaintiff King is ordered to file his Second Amended Complaint in strict accordance with the Court's ruling, by no later than December 2, 2016.  The Court will not favorably entertain an extension of this deadline.**

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants Joe Manns and My Town Media, Inc.'s Motion to Strike Amended Complaint (Doc. 15), and Defendants Lori Fleming and Kurtis Loy's Motion to Strike Plaintiffs' Second Amended Complaint (Doc. 17), are **granted**.

**IT IS FURTHER ORDERED BY THE COURT** that Defendants Joe Manns and My Town Media, Inc.'s Motion for Leave to File Supplemental Memorandum in Support of Their

Pending Motion to Dismiss (Doc. 33) is **granted**.  The Court has considered the arguments contained in Defendants' proposed supplemental memorandum.  Therefore, Defendants need not file their supplemental memorandum with the Court.

   **IT IS FURTHER ORDERED BY THE COURT** that Plaintiffs' Motion for Leave to File Second Amended Complaint Nunc Pro Tunc (Doc. 22) is **granted in part and denied in part**.  The motion is **denied** as to all claims of Plaintiffs other than Plaintiff Kasey King.  The motion is further **denied** as to proposed Counts 1, 2, 5, and 7, and as to proposed Count 3 as it relates to Defendants Joe Manns and My Town Media, Inc.  The motion for leave to amend is **granted** as to proposed Count 3 as it relates to Plaintiff King's claim against Defendants Lori Fleming, Kurtis Loy, and Bill Wachter.  The motion is further **granted** as to Plaintiff King's proposed Counts 4 and 6.  **Plaintiff King shall file his Second Amended Complaint in accordance with the Court's ruling by no later than December 2, 2016.**

   **IT IS FURTHER ORDERED BY THE COURT** that Defendants Lori Fleming and Kurtis Loy's Motion to Dismiss (Doc. 7), and Defendants Joe Manns and My Town Media, Inc.'s Motion to Dismiss for Lack of Jurisdiction and For Failure to State a Claim (Doc. 12), are **moot.**

   **IT IS SO ORDERED.**

  Dated: November 17, 2016

         S/ Julie A. Robinson
         JULIE A. ROBINSON
         UNITED STATES DISTRICT JUDGE