**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**KASEY KING,**

   **Plaintiff,**

   **v.**           **Case No. 16-2108-JAR-GLR**

**LORI FLEMING,
KURTIS LOY,
MY TOWN MEDIA, INC., and
WILLIAM WACHTER**

   **Defendant.**

<u>**MEMORANDUM AND ORDER**</u>

  This matter comes before the Court on Defendants Lori Fleming and Kurtis Loy's Joint

Motion for Sanctions (Doc. 44).  Defendants request sanctions in the form of striking the Second

Amended Complaint—and by extension, dismissal of this case—as well as attorney's fees and

costs associated with defending this action.  The motion is fully briefed and the Court is prepared

to rule.  For the reasons stated more fully below, the Court grants Defendants' motion for

sanctions, dismisses this case in its entirety, and orders Plaintiff's counsel Adebayo Ogunmeno,

Plaintiff Kasey King, and Eric Muathe to pay costs and attorney's fees to Defendants.

  **I.**  **Background**

  Although the Court previously detailed the procedural history and factual allegations

involved in this case in its Memorandum and Order granting Plaintiff leave to amend, a brief

review of the history of this case is necessary to illuminate the conduct relevant to this motion.

Plaintiffs Eric Muathe, Kasey King, and sixteen other Plaintiffs filed their original Complaint

against Defendants Lori Fleming, Kurtis Loy, My Town Media, Inc., and Joe Manns, alleging

various civil rights and state law claims based on the alleged removal of Plaintiffs' radio

advertisements.  The advertisements were designed to garner support for a signature drive

campaign to remove Defendants Fleming and Loy from their positions as state judges due to

perceived corruption.  Plaintiffs alleged Judges Fleming and Loy used their status as judges to

order Defendants to remove the advertisements.  Plaintiffs filed a First Amended Complaint on

May 13, 2016, which added thirty additional Plaintiffs.  Defendants each filed motions to

dismiss.

Without seeking leave of Court or Defendants' consent, Plaintiffs filed a Second

Amended Complaint on July 27, 2016.[1]  The Second Amended Complaint added allegations

regarding Judges Fleming and Loy's use of their official positions to persuade Defendants

Wachter and My Town to take Plaintiffs' radio advertisement off the air.  Relevant to this matter,

the Second Amended Complaint alleged the following:

> 48. Meanwhile, in furtherance of the agreement and conspiracy between Fleming
> and Loy to infringe on plaintiffs' constitutional rights, defendant Fleming on
> February 19, 2015, willfully and intentionally prepared [sic] wrote an email to
> defendant Wachter, and for maximum effects, deliberately use [sic] her (Fleming)
> official court assigned e-mail account, which essentially states as follows:
> > "Bill Wachter, is this your station? Kurt is saying Eric Muathe and posse
> > cometaut (sic) have an ad on this station to oust all the judges. I would just
> > like to know since my kids were listening when I heard the ad this
> > morning on my way to work. If so, get it off." (See Exhibit 2 – unofficial
> > version of defendant Fleming email to defendant Wachter).[2]

Plaintiffs attached two exhibits to their Second Amended Complaint, one of which they

referred to as an "unofficial version of defendant Fleming email to defendant Wachter."[3]  The

second exhibit ("Exhibit 2") appears to be a portion of an email written by Judge Fleming.[4]  The

only text visible on the underlying document states, "Is this your station? Kurt is saying Eric

---

[1]Doc. 14.

[2]*Id.* at 9 (alterations in brackets added).

[3]*Id.*

[4]Doc. 14-2.

Muathe and posse cometaut have an ad on this station to oust all the judges.  I would just like to know since my kids . . . ."[5]  The remainder of the message is not shown.  However, included in the exhibit is superimposed text that appears to suggest what the entirety of the message states:

> [Bill Wachter] is this your station? Kurt [Judge Kurtis l. Loy] is saying Eric Muathe and posse cometaut [sp] have an ad on this station to oust all the judges.  I would just like to know since my kids [were listening when I heard the ad this morning on my way to work.  If so, get it off].[6]

Defendants filed motions to strike the Second Amended Complaint on July 28, 2016.  On July 14, 2016, Plaintiffs filed a Motion for Extension of Time to respond to Defendants Fleming and Loy's motions for dismissal and stay of discovery.  The motion did not state whether there had been prior consultation with other parties before the filing of the motion, as required by D. Kan. Rule 6.1(a)(1).[7]  Defendants filed a response in opposition to the motion.  The Court granted Plaintiffs' motion in part, and extended Plaintiffs' response deadline until July 29, 2016.  In granting the extension, the Court noted that Plaintiffs' motion did not state whether there had been prior consultation with other parties before the filing of the motion, and reminded Plaintiffs of their obligation to comply with the Local Rules.[8]

Plaintiffs did not file a response by the July 29 deadline.  Instead, Plaintiffs filed a motion on August 1, 2016, seeking leave to file the response out of time.[9]  Plaintiffs' counsel explained that he had left the country because of a death in the family on July 27, 2016, and could not access the Internet on July 29 to request another extension of time.  The Court entered a Memorandum and Order on August 18, 2016, denying Plaintiffs' motion to file a response out of

---

[5] *Id.*

[6] *Id.*; Doc. 37-2.

[7] *Id.*; *see* D. Kan. R. 6.1(a)(1).

[8] Doc. 18.

[9] Doc. 19.

time.[10]  In denying the motion, the Court referenced its previous extension of the deadline, Plaintiffs' failure to meet the extended deadline, and Plaintiffs' history of noncompliance with the Local Rules in this case.  On August 15, 2016, Plaintiffs filed a Motion for Leave to File Second Amended Complaint Nunc Pro Tunc.[11]

On November 17, 2016 the Court entered a Memorandum and Order granting Defendants' motions to strike and granting Plaintiff King leave to amend as to Counts 3, 4, and 6 of his Second Amended Complaint.[12]  Plaintiff King filed his Second Amended Complaint on November 28, 2016.[13]  In the Second Amended Complaint, Plaintiff included the allegation described above regarding the alleged email from Judge Fleming to Defendant Wachter. Plaintiff also attached Exhibit 2, the document reflecting a portion of an email with superimposed text, to this Complaint.

On December 1, 2016, Defendants Loy and Fleming submitted a "Golden Letter" along with an unfiled Rule 11 Motion to Plaintiff King and his counsel, Adebayo Ogunmeno.[14] Defendants explained in the letter that they would not file the motion for sanctions if Plaintiff withdrew the Second Amended Complaint or agreed to dismissal within twenty-one days of service of the letter.  Plaintiff did not withdraw the Amended Complaint or agree to dismissal, and Defendants filed the instant motion on December 22, 2016.  Attached to the motion is an exhibit that appears to be an email from Judge Fleming to Defendant Wachter, sent on February

---

[10]Doc. 25.

[11]Doc. 22.

[12]Doc. 34 at 28–29.  The Court later amended its ruling by further limiting Plaintiff's amendments as to his tortious interference with contractual relations claim and by dismissing Joe Manns from this case.  Doc. 36.

[13]Doc. 37.

[14]Doc. 38.

19, 2015.[15]  The exhibit states, "Is this your station? Kurt is saying Eric Muathe and posse cometaut have an ad on this station to oust all the judges.  I would just like to know since my kids watch Colgran live through this station.  Thanks."[16]  Defendants also attached an affidavit by Judge Fleming, in which she states that the exhibit referenced above is a true and correct copy of the email she sent to Defendant Wachter on February 19, 2015.[17]

Mr. Ogunmeno responded by submitting affidavits of Plaintiff King and two former Plaintiffs, Travis Carlton and Eric Muathe.  Mr. Carlton states in his affidavit that at some point

> I came into possession of the email defendant Fleming sent to defendant Wachter on February 19, 2015; unfortunately however, some portion of the email was cut off.  During the course of my interactions with members of the community I gained knowledge that the cut off portion of the email defendant Fleming wrote to defendant Wachter on February 19, 2015 stated something to the effect that defendant Wachter should "stop running or get plaintiff's radio ad off his radio station."[18]

Mr. Carlton states that while "playing pick-up basketball at YMCA in Pittsburg, Kansas," he heard attorney Eric Lawson say "something to the effect that" Judge Fleming told Defendant Wachter in the February 19 email to "get [the advertisements] off his radio station."[19]  Mr. Carlton further states that his "DUI lawyer Stephen Hangermayer" explained that prosecutors had refiled a criminal case against him because he had "offended very power[ful] people in the community when [he] participated in the grand jury petition drive."[20]  Finally, Mr. Carlton states that a secretary at Fern & Hangermayer told him "something to the effect that" the email from

---

[15]Doc. 45-3.

[16]*Id.* at 1.

[17]*Id.* at 2.

[18]Doc. 60-1 at 2.

[19]*Id.*

[20]*Id.*

Judge Fleming directed Defendant Wachter to "take or get plaintiff's grand jury petition advertisement campaign off his radio station."[21]

Mr. Muathe states in his affidavit that Mr. Carlton gave him the "incomplete email defendant Fleming sent to defendant Wachter February 19, 2015."[22]  Mr. Muathe states that after he received the document,

> I then prepared a demonstrative overlay in document attached as Exhibit 2 to plaintiff's second amended complaint as a proffer of what I believe the cut-off portion would say based on the information I gathered from Travis Carlton.  I did not alter any word on the document attached as Exhibit 2 to plaintiff's second amended complaint; it was just a demonstration of what I believe was closer to the truth.[23]

Plaintiff states in his affidavit that after learning about the email from Mr. Carlton, he went to the courthouse and spoke with a staff member in the clerk of court's office about obtaining a copy of the email at issue, but the staff member told him she was "unable to provide [him] any email because emails in their system are routinely deleted."[24]

## II.    Discussion

### A.    Rule 11

Pursuant to Fed. R. Civ. P. 11(a), "Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented."[25]  Rule 11(b) elaborates on the import of an attorney or party's signature on a pleading:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented

---

[21]*Id.*

[22]Doc. 60-3 at 2.

[23]*Id.*

[24]Doc. 60-2 at 2.

[25]Fed. R. Civ. P. 11(a).

party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

    (1)    it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

    (2)    the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

    (3)    the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

    (4)    the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.[26]

Rule 11 further provides that upon a finding of a Rule 11(b) violation, "the court may impose an appropriate sanction on any" responsible attorney or party, and that the sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."[27]  District courts have broad discretion to fashion appropriate sanctions for Rule 11 violations, and these sanctions may include striking a portion of the pleading, awarding attorney's fees, or dismissing the case altogether.[28]

### B.    Exhibit 2

Defendants move for Rule 11 sanctions based on Plaintiff's counsel, Mr. Ogunmeno's, failure to conduct an inquiry reasonable under the circumstances into the manipulation of Exhibit 2.  Rule 11 imposes a duty upon attorneys to conduct "an inquiry reasonable under the circumstances" to ensure that the factual allegations presented to the court "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable

---

[26]Fed. R. Civ. P. 11(b).

[27]Fed. R. Civ. P. 11(c).

[28]Fed. R. Civ. P. 11(c)(4); *Cooter & Gell v. Hartmarx Corp.*, 496 U.D. 384, 407 (1990) (explaining that district courts have "broad discretion to impose Rule 11 sanctions"); *Roth v. Green*, 466 F.3d 1179, 1187 (10th Cir. 2006) (reviewing district court decision imposing Rule 11 sanctions pursuant to abuse of discretion standard).

opportunity for further investigation."[29]  Courts apply an objective standard to determine whether an attorney has met the "reasonable inquiry" requirement.[30]  Under this standard, "an attorney's good faith belief in the merit of factual allegations and legal claims asserted in a pleading is not sufficient to avoid Rule 11 sanctions."[31]  "Rather, the attorney's belief must be based on a reasonable inquiry and 'in accord with what a reasonable, competent attorney would believe under the circumstances.'"[32]  To comply with this standard, the attorney must at least "stop, think, and assure himself of the legal and factual basis of a pleading before signing and presenting it to the court."[33]

Mr. Ogunmeno attached Exhibit 2 to the Second Amended Complaint, and presented the document to the Court as "an unofficial version" of the supposed email from Judge Fleming to Defendant Wachter.[34]  In reality, Exhibit 2 is much closer to a "fraudulent version" of the email than an "unofficial version."  Exhibit 2 shares many similarities with Exhibit 3 (attached to Defendants' memorandum in support of their motion for sanctions), which Judge Fleming swears under penalty of perjury is a true and accurate copy of her email to Defendant Wachter.[35] In fact, Exhibit 2 appears to largely mirror Exhibit 3 except in two glaring ways.  First, as Plaintiffs acknowledge, the end of the message displayed in Exhibit 2 is mysteriously missing. Second, as Plaintiffs also acknowledge, Exhibit 2 includes the "demonstrative overlay" that Mr.

---

[29]Fed. R. Civ. P. 11(b).

[30]*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 553 (1991); *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1155 (10th Cir. 1991) (citing *White v. Gen. Motors Corp.*, 908 F.2d 675, 680 (10th Cir. 1990)).

[31]*Taylor v. United States*, 151 F.R.D. 389, 393 (D. Kan. 1993) (citing *White*, 909 F.2d at 680).

[32]*Id.* (quoting *White*, 909 F.2d at 680).

[33]*Id.* (citation omitted); *US Sprint Commc'ns Co. v. Kaczmarek*, 121 F.R.D. 414, 416 (D. Kan. 1988) (citing *Duncan v. WJLA-TV, Inc.*, 106 F.R.D. 4, 5–6 (D.D.C. 1984)).

[34]Doc. 14-2; Doc. 37-2.

[35]Doc. 45-3.

Muathe placed over the apparent original message to reflect what he believed "was closer to the truth."  This "demonstrative overlay" or "proffer," as Plaintiff and Mr. Ogunmeno refer to it, is a prediction as to how the message will end.  In the superimposed text, Mr. Muathe suggests in brackets that the message ends by Judge Fleming ordering Defendant Wachter to take the advertisements off the air.[36]  The email that Defendants offer—which appears in its entirety and is supported by an affidavit of someone with personal knowledge of the email—contains no similar demand, but simply poses a question about the advertisement.[37]

Plaintiff offers no affidavits by persons with knowledge of the email or evidentiary support for the notion that the true email, assuming it exists, comports with the language that Mr. Muathe admits he inserted into Exhibit 2.  Instead, Mr. Carlton and Mr. Muathe state in their affidavits that this version is based on Mr. Carlton's interactions with "members of the community," an attorney, and a legal secretary, none of whom indicated they had seen the email.[38]  Mr. Ogunmeno further suggests, without explaining how, that "[i]t is likely that discovery will certainly support plaintiff's version of the story."[39]  Plaintiff, Mr. Ogunmeno, and Mr. Carlton themselves seem to question the veracity of Mr. Muathe's inserted language, as they all state the true email says "something to the effect" of what Exhibit 2 reflects.[40]  Stated differently, even Plaintiff and Mr. Ogunmeno admit that Exhibit 2 does not reflect the true

---

[36]Docs. 37-2 & 14-2.

[37]Doc. 45-3.

[38]Doc. 60-1 at 2; Doc. 60-3 at 2.  Defendants state in their reply that a search of the Kansas Supreme Court's Office of Attorney Registration revealed that the Office's online directory does not contain the names of the two attorneys Mr. Carlton references.  Doc. 61 at 3 nn.1 & 2.

[39]Doc. 60 at 5.

[40]Doc. 60 at 2; Doc. 60-1 at 2; Doc. 60-2 at 2; *see* Doc. 60-3 at 2 (Mr. Muathe stating that the language he inserted was based on "what I believe the cut-off portion would say based on the information I gathered from Travis Carlton").  Notably, the Second Amended Complaint does not allege that the email says "something to the effect" of what Exhibit 2 reflects, but instead alleges that the email "essentially states" what the language inserted into Exhibit 2 reflects.

email.[41]  In sum, Exhibit 2 contains at least two indicators of fraud—omitted language and language inserted by a party—and Mr. Ogunmeno understood at the time he filed the Second Amended Complaint that the Exhibit did not reflect the true email.

### C.   Mr. Ogunmeno's Conduct

The Court now turns to whether Mr. Ogunmeno's conduct, in light of what was known about Exhibit 2, constituted a Rule 11 violation.  Mr. Ogunmeno states in his response that after Mr. Muathe "prepared a demonstrative overlay" in Exhibit 2, Mr. Ogunmeno filed Exhibit 2 with the Second Amended Complaint.[42]  Mr. Ogunmeno does not suggest that he made *any* inquiry, let alone a reasonable one, into the veracity of Exhibit 2, despite the strong indicators of fraud and his knowledge that the document did not represent the full email.[43]  There is no doubt that when a reasonable attorney is presented with a document central to a case, and the attorney knows her client has tampered with the document, the attorney would assuredly "stop, think, and assure [herself] of the legal and factual basis of [the] pleading before signing and presenting it to the court."[44]  But here, despite knowing that his clients had tampered with Exhibit 2, Mr. Ogunmeno employed a "full speed ahead"—rather than a "stop and think"—approach.

Instead of attempting to obtain the full email or contacting any of the sources that his clients claimed were the basis for Mr. Muathe's "demonstrative overlay," Mr. Ogunmeno

---

[41]*See* Doc. 52 at 2 (Mr. Ogunmeno stating that other than the "proffer of what [Eric Muathe] believes the cut-off portion of the email will say based on the information available to him," "the 'unofficial' email in Exhibit 2 attached to plaintiff's amended complaint was never altered in any ways [sic]").

[42]*See* Doc. 60 at 3.

[43]Mr. Ogunmeno was clearly aware of the indicators of fraud and knew that the document did not accurately represent the original email at the time he filed Exhibit 2 with the Second Amended Complaint.  In responding to Defendants' Motion to Stay Case Pending Resolution of Rule 11 Motion, Mr. Ogunmeno stated that "[a] cursory glance at Exhibit 2 . . . will show that the entire content of the 'unofficial' email copy was not visible," and that "a look at Exhibit 2 will show that . . . Eric Muathe . . . wrote a proffer of what he believes the cut-off portion of the 'unofficial' email will say."  Doc. 49 at 1.

[44]*Taylor v. United States*, 151 F.R.D. 389, 393 (D. Kan. 1993); *see Jiminez v. Madison Area Tech. Coll.*, 321 F.3d 652, 654–58 (7th Cir. 2003) (holding that sanction of dismissal was appropriate where attorney used and filed "obviously fraudulent documents" in support of race discrimination claims).

submitted Exhibit 2 with the Second Amended Complaint that he filed, without leave of the

Court, on July 27, 2016.  Mr. Ogunmeno again submitted Exhibit 2 with the Second Amended

Complaint he filed after this Court granted Plaintiff King leave to amend.  Perhaps more

troubling, however, is how Mr. Ogunmeno incorporated Exhibit 2 into the Second Amended

Complaint.  The Amended Complaint quotes directly from the superimposed text that Mr.

Muathe inserted into Exhibit 2, and refers to Exhibit 2 as an "unofficial version of defendant

Fleming email to defendant Wachter."[45]  The quoted text in the Amended Complaint does not

include the brackets around the language that Mr. Muathe inserted, although the brackets appear

in Exhibit 2.  Mr. Ogunmeno's inclusion of the superimposed text in the Complaint, without

brackets or any other qualifiers, masks the fact that the quoted text was created by Mr. Muathe,

rather than one of the parties to the email.

Furthermore, when Defendants confronted him with a "Golden Rule" letter, a .PDF

document that appears to be the full email, and an affidavit by Judge Flemming stating that the

.PDF document reflects the original email, Mr. Ogunmeno refused to dismiss the Complaint.

Neither did Mr. Ogunmeno consult with any of the individuals that were supposedly the sources

behind Mr. Muathe's inserted text.  Instead, Mr. Ogunmeno flatly asserted that Defendants'

claim that he conducted no inquiry into the inserted text was "without merit."[46]  Additionally,

Mr. Ogunmeno made the incredible request that Plaintiff, as the party who submitted a

manipulated exhibit to the Court, have the opportunity to submit the email attached to

Defendants' motion for sanctions to "forensic testing," because he asserts the format of the

document "is susceptible to easy data changes and manipulation."[47]  This request demonstrates

---

[45]Doc. 14 at 9.

[46]Doc. 60 at 7.

[47]*Id.* at 3–4; Doc. 52 at 2–3.

that not only did Mr. Ogunmeno fail to make a reasonable inquiry into the manipulated

document, but he also failed to respond reasonably when confronted with the fact that Exhibit 2

had been altered.  This is not surprising, given that Mr. Ogunmeno knew at the time he filed the

Second Amended Complaint that Exhibit 2 had been altered and did not accurately reflect the

email.

      **D.**      **Sanctions**

      Because Mr. Ogunmeno failed to make a reasonable inquiry into the authenticity of

Exhibit 2, and because he submitted to the Court a manipulated exhibit that his clients prepared,

the Court finds that Rule 11 sanctions are warranted.  Pursuant to Rule 11, the Court must

impose a sanction that is "limited to what suffices to deter repetition of the conduct or

comparable conduct by others similarly situated."[48]  "In determining which sanctions should be

imposed, the Court must consider the purposes to be served by the imposition of sanctions."[49]

These purposes include (1) deterring future litigation abuse; (2) punishing present litigation

abuse; (3) compensating victims of litigation abuse; and (4) streamlining court dockets and

facilitating case management.[50]  "The primary goal of sanctions is to deter misconduct."[51]

Appropriate sanctions may include dismissal, striking of a complaint, striking of offending

references, a formal reprimand, imposition of court fines, or award of attorney's fees and/or costs

to the victim of the litigation abuse.[52]

---

[48]Fed. R. Civ. P. 11(c)(4).

[49]*Zhou v. Pittsburg State Univ.*, 252 F. Supp. 2d 1194, 1205 (D. Kan. 2003).

[50]*Id.* (citing *White v. Gen. Motors Corp.*, 908 F.2d 675 (10th Cir. 1990)).

[51]*Id.* (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990)).

[52]*See, e.g.*, Fed. R. Civ. P. 11(c)(4); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 407 (1990)
(explaining that district courts have "broad discretion to impose Rule 11 sanctions"); *Roth v. Green*, 466 F.3d 1179,
1187 (10th Cir. 2006) (reviewing district court decision imposing Rule 11 sanctions pursuant to abuse of discretion
standard); *Stewart v. City of Chi.*, 622 F. Supp. 35, 37–38 (N.D. Ill. 1985) (striking complaint as sanction pursuant to
Rule 11).

### 1.      Striking of Complaint and Dismissal

The Tenth Circuit has cautioned courts to exercise restraint in employing dismissal as a sanction.[53]  "Because dismissal is such a harsh sanction, it is appropriate only in cases of 'willfulness, bad faith, or [some] fault of petitioner.'"[54]  The following non-exhaustive list of factors helps guide the determination of whether dismissal is an appropriate sanction:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.[55]

Having considered the factors above and the purposes to be served by imposing sanctions, the Court finds that striking the Second Amended Complaint, and by extension dismissing this case, is an appropriate sanction.  First, the degree of actual prejudice to Defendants as a result of Mr. Ogunmeno and Plaintiff's conduct is great.  Since the filing of Plaintiffs' Second Amended Complaint on July 27, 2016, Defendants have been forced to litigate a case that would not have proceeded without the presence of the manipulated document and the associated allegation.  Defendants have also been required to spend time and resources attempting to confer with Plaintiff's counsel about this matter and filing the instant motion.  Second, Mr. Ogunmeno's failure to reasonably investigate the factual basis of Exhibit 2 has interfered with the judicial process.  Because Exhibit 2 and the associated allegation are central to this case, the manipulated document had a significant impact on the Court's previous ruling granting Plaintiff leave to amend.[56]  The Court must now revisit that ruling, as well as devote finite time and resources to deciding this motion.

---

[53]*Chavez v. City of Albequerque*, 402 F.3d 1039, 1044 (10th Cir. 2005).

[54]*Id.* (citing *Archibeque v. Atchison, Topeka, & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995)).

[55]*Id.* (quoting *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)).

[56]*See generally* Doc. 34.

Third, the litigants to this action were culpable in manipulating Exhibit 2 and providing it to Mr. Ogunmeno for submission to this Court.  Fourth, although the Court has not previously warned Plaintiff that dismissal of the action would be a likely sanction for noncompliance, Defendants served a copy of their motion, which sought dismissal as a sanction, on Plaintiff on December 1, 2016.[57]  This notice was sufficient for purposes of Rule 11.[58]  Finally, the Court finds that lesser sanctions would not satisfy the purposes of Rule 11, namely, deterring misconduct.  Indeed, given Mr. Ogunmeno's history of non-compliance with the Local Rules and Federal Rules of Civil Procedure, his insistence on advancing this case despite his knowledge that a document central to the litigation was manipulated, and his failure to perform a reasonable inquiry into the factual basis of the Second Amended Complaint, the Court fears that Plaintiff and Mr. Ogunmeno will continue to abuse the judicial process by using altered evidence in later stages of litigation and draining judicial resources.  Therefore, the Court strikes the Second Amended Complaint and dismisses this case in its entirety.

Even if the Court were convinced that a lesser sanction would be appropriate, such as striking the offending allegation—for all the reasons explained above, the Court is not so convinced—such a sanction would still require striking of the Second Amended Complaint and dismissal of this case.  The Court previously granted Plaintiff leave to amend as to his 42 U.S.C. § 1983, breach of contract, and tortious interference with contractual relations claims.[59]  As the Court made clear in its Memorandum and Order granting Plaintiff leave to amend, the allegation that Judge Fleming ordered Defendant Wachter to take the advertisements down in her February 19 email was central to the Court's finding that Plaintiff had plausibly alleged state action, as

---

[57]Doc. 38; Doc. 45-1.

[58]Fed. R. Civ. P. 11(c)(2) (setting forth procedures for notice of a motion for sanctions).

[59]Docs. 34 & 36.

required to state a viable § 1983 claim.[60]  Absent this allegation, the Complaint presents only

conclusory statements that Judges Fleming and Loy conspired with Defendant Wachter.  Thus, if

the Court were to simply strike the allegation based on Exhibit 2, Plaintiff's § 1983 claim would

be subject to dismissal for failure to state a claim.  The same would be true for Plaintiff's tortious

interference claim, because the allegation based on Exhibit 2 was central to that claim as well.

Finally, although the allegation is less central to Plaintiff's breach of contract claim against

Defendant My Town, this claim would also be subject to dismissal because the Court would

exercise its discretion to decline supplemental jurisdiction over this purely state law claim if it

dismissed the § 1983 claim.[61]  Thus, the clear domino effect of striking the allegation

incorporating the fabricated language from Exhibit 2 would be the dismissal of this case.

 As explained above, however, the Court strikes the Second Amended Complaint and

dismisses this case as a sanction for Plaintiff and Mr. Ogunmeno's misconduct, rather than based

on futility grounds.  The Court is mindful that dismissal of a case in its entirety is a harsh

sanction.  But the Court is equally mindful that dismissal is warranted where, as here, a party

manipulates evidence that is central to the case, counsel fails to make a reasonable inquiry into

such evidence, and counsel promotes the manipulated evidence with knowledge of the

manipulation.[62]  Accordingly, the Court strikes the Second Amended Complaint and dismisses

this case in its entirety.

---

[60]*See* Doc. 34 at 6, 7, 17–19.

[61]28 U.S.C. § 1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Muller v. Islands at Rio Rancho Homeowners Ass'n*, 564 Fed. App'x 411, 415 (10th Cir. 2014) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)); Doc. 34 (Court explaining that it would exercise supplemental jurisdiction *because* Plaintiff's proposed § 1983 claims were not futile).

[62]*See, e.g.*, *Jiminez v. Madison Area Tech. Coll.*, 321 F.3d 652 654–57 (7th Cir. 2003) (holding that dismissal of civil rights action with prejudice was not unduly harsh sanction in light of use and filing of fraudulent letters and emails in support of fictitious allegations of racial discrimination against former employer); *Pope v. Fed. Exp. Corp.*, 974 F.2d 982, 984 (8th Cir. 1992) (upholding district court's dismissal of case as sanction for use of

### 2.      Attorney's Fees and Costs

The Court further finds that imposing attorney's fees and costs is an appropriate sanction in this case.  Mr. Ogunmeno's filing and incorporation of Exhibit 2 into the Second Amended Complaint, without performing an inquiry reasonable under the circumstances, was performed in bad faith.[63]  Additionally, as described above, Plaintiff and Mr. Ogunmeno's conduct, as well as Mr. Muathe's conduct in manipulating Exhibit 2, has prejudiced Defendants in that they have been required to litigate a case that otherwise would have been dismissed.  The Court therefore orders Plaintiff, Mr. Ogunmeno, and Mr. Muathe to pay in equal shares to Defendants "all of the reasonable attorney's fees and other expenses directly resulting from the violation."[64]

The Tenth Circuit has explained that district courts must consider at least the following circumstances in determining the amount of monetary sanctions to impose pursuant to Rule 11: (1) the reasonableness (lodestar calculation) of the requested fees; (2) the minimum amount necessary to deter; (3) the sanctioned party's ability to pay; and (4) other factors, such as the offending party's history, experience, ability, the severity of the violation, and the risk of chilling

---

manufactured evidence and perjured testimony); *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488–89 (9th Cir. 1991) (holding that dismissal of case was proper where party and counsel had made changes to deposition that was of "central importance" to the case, in violation of Fed. R. Civ. P. 30(e)).

[63]*Gieringer v. Silverman*, 731 F.2d 1272, 1281 (7th Cir. 1984) ("Under Rule 11, a willful violation of the rule against bad faith pleadings may subject an attorney to discipline, including the taxation of fees against the *attorney*.") (emphasis in original).

[64]Fed. R. Civ. P. 11(c)(4).  Although the Court previously dismissed Mr. Muathe from this case, the Court finds that it retains jurisdiction to impose monetary sanctions against him.  *Doria v. Class Action Servs., LLC*, 261 F.R.D. 678, 684 (S.D. Fla. 2009) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990)) ("district courts may enforce Rule 11 even after the case is dismissed, as a district court's jurisdiction is invoked by the filing of the underlying complaint, which 'supports consideration of both the merits of the action and the motion for Rule 11 sanctions arising from that filing.'"); *Bryant v. Brooklyn Barbecue Corp.*, 932 F.2d 697, 699 (8th Cir. 1991) (holding that district court had jurisdiction to impose Rule 11 sanctions on plaintiff's counsel, even though original complaint was dismissed prior to service on defendants, where violation occurred when original complaint was filed for an improper purpose and without the "reasonable inquiry" required by Rule 11).

effects on zealous advocacy.[65]  Additionally, D. Kan. Rule 54.2 requires a party who moves for attorney fees to consult with the other party before a court may award attorney's fees.[66]

In briefing this motion, Defendants did not address the amount of any potential attorney's fees and costs and did not state whether they had consulted with the opposing party regarding attorney's fees and costs.  The Court therefore directs Defendants to initiate consultation with Plaintiff, Mr. Ogunmeno, and Mr. Muathe regarding the amount of attorney's fees and costs to be awarded.  If the parties reach an agreement, they shall file a stipulation and request for an order setting forth the amount of fees and costs to be awarded.[67]  If the parties cannot agree, Defendants shall, within thirty (30) days of the date of this Memorandum and Order, file a statement that the parties have been unable to reach an agreement with regard to the fee award and a memorandum setting forth the factual basis for each criterion that the court is asked to consider in making an award.[68]  In any event, Defendants shall submit an affidavit detailing their reasonable costs and attorney's fees incurred in defending this action since July 27, 2016, the date of the filing of Plaintiff's Second Amended Complaint.  Upon submission of the stipulation or statement that the parties have been unable to reach an agreement, the court will consider the factors above and make a determination as to the amount of attorney's fees and costs to impose.

## III.    Conclusion

After a former Plaintiff to this action presented a manipulated document to Mr. Ogunmeno, Mr. Ogunmeno attached the altered document as an exhibit, incorporated the manipulated language into Plaintiffs' Second Amended Complaint, and presented the inserted

---

[65]*White v. Gen. Motors Corp.*, 908 F.2d 675, 684–85 (10th Cir. 1990).

[66]D. Kan. R. 54.2(a).

[67]D. Kan. R. 54.2(b).

[68]D. Kan. R. 54.2(c).

language as a factual allegation to the Court.  Mr. Ogunmeno made no inquiry into the veracity of Exhibit 2 or the related allegation, despite the clear indicators of fraud and his awareness that his client had altered the document.  Despite also being made aware by Defendants that Exhibit 2 was altered and is misleading, Mr. Ogunmeno continues to press forward with this litigation.  For these reasons, the Court finds that dismissal is the only sanction that can sufficiently deter repetition of this conduct by Plaintiff, Mr. Ogunmeno, Mr. Muathe, and others similarly situated. The Court further finds that requiring Plaintiff, Mr. Ogunmeno, and Mr. Muathe to pay reasonable attorney's fees and costs associated with defending this litigation to Defendants since July 27, 2016, is warranted in this case because of the prejudice caused to Defendants and to further deter Plaintiff, Mr. Ogunmeno, Mr. Muathe, and others similarly situated.  Although further sanctions would be warranted, the Court limits the sanctions imposed here to dismissal and reasonable attorney's fees and costs because the Court is convinced these sanctions will sufficiently deter the violations outlined in this ruling.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants Lori Fleming and Kurtis Loy's Joint Motion for Sanctions (Doc. 44) is **granted**.  Plaintiff's Second Amended Complaint is stricken and this case is **dismissed with prejudice**.  **Plaintiff Kasey King, counsel Adebayo Ogunmeno, and Eric Muathe shall pay in equal shares the reasonable attorney's fees and costs directly resulting from the Rule 11 violation.**  Defendants shall promptly initiate consultation with Plaintiff, Mr. Ogunmeno, and Mr. Muathe regarding the amount of attorney's fees and costs to be awarded.  **If the parties reach an agreement**, they shall file a stipulation and request for an order setting forth the amount of fees and costs to be awarded.  **If the parties cannot agree, Defendants shall, within thirty (30) days of the date of this Memorandum and Order**, file a statement that the parties have been unable to reach an

agreement with regard to the fee award and a memorandum setting forth the factual basis for each criterion that the court is asked to consider in making an award.  In any event, Defendants shall submit an affidavit detailing their reasonable costs and attorney's fees incurred in defending this action since July 27, 2016, **within thirty (30) days of the date of this Memorandum and Order**.

**IT IS SO ORDERED.**

Dated: January 27, 2017

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
